## ALLISON *vs.* BOWLES.

The 4th section of the act of February 11, 1835, concerning fraud, (R. S. 1835, p. 283,) rendering void certain conveyances of personal property, "as against creditors and purchasers," &c., embraces only creditors of, or purchasers from, the parties to the conveyance. A purchaser from a person not a party to the conveyance, but having only the possession of the property in right of another, and not deriving title under the conveyance, is not embraced within this section.

APPEAL from Cooper Circuit Court.

HAYDEN *and* RICHARDSON, *for Appellant.*

1. The court below erred in refusing to permit the appellant to show that Ryan was in the possession of the negro for many months, in Boonville; that he used and treated her as his own property; that Bowles kept his claim secret from Allison, and that the possession of Ryan was with the knowledge and consent of Bowles; and that Bowles permitted Ryan to bring said negro with him from Virginia, where plaintiff resided, to Missouri.

2. That possession of personal property raises the presumption of ownership.— 3 Bibb, 93; J. Marshall, 56, 7; 1 Mo. Rep., Irwin *vs.* Wells, 9; 1 Mo. Rep., 561.

3. That the court erred in refusing to give the instructions asked by the defendant.

STUART *and* MILLER, *for Appellee.*

There was no error in permitting the plaintiff's evidence to go to the jury.

The execution of the original deed was proven by the depositions: the certificates on the deed are in accordance with the acts of Virginia, and were read to prove that the deed had been properly recorded in the state of Virginia. The objectionable parts of the depositions were not read to the jury.

The instructions of the defendant were properly refused, because—

The defendant not being either a purchaser or a judgment creditor of the parties to the deed, could not attack the transfer from Stephen to Paul Bowles on the ground of fraud. The deed was a good deed against all but creditors and purchasers of Stephen Bowles.—5 J. J. Marshall, 87; 4 Monroe, 581; 4 Monroe, 122; McCreary *vs.* Parcely, 1 Marshall, 114; 7 Mo. Rep., 127; 1 Pirtle, p. 473, sec. 65; 3 Littell, 10; 7 Monroe, 268.

The bare possession of Ryan gave him no power to sell. He was a mere bailee with the permission of the plaintiff, and in accordance with the terms of the deed of trust. The deed expressly precluded him from exercising acts of ownership, and in selling he was attempting to commit a fraud upon the plaintiff, and it is immaterial whether Allison knew the extent of his right. The doctrine of *caveat emptor* required him to ascertain by what right Ryan held the negro.— Hardin's Rep., Chism *vs.* Woods, 531.

The possession of Ryan was no evidence of title in this cause against the plaintiff, who had established a paramount right. His possession was not adverse but by permission of the plaintiff, under the authority of the deed.—Hardin's Rep., 531, Chism *vs.* Woods; 2 Starkie, 656, title, "Possession;" 1 Dana, 115, Pool *vs.* Adkinson.

That the deed of trust from Stephen Bowles to Paul C. Bowles would have been good against the grantor, his heirs and all other persons but the creditors of, or subsequent purchasers from, the grantor, Stephen Bowles, had it been unrecorded, as the laws of Virginia require.—5 Cranch, 154, Pierce *vs.* Turner.

That when a wife or child has the legal or equitable title to personal property, and such wife or child resides with a husband or father, who exercises control or authority over such personal property, yet the law deems the possession with the person holding the title.—2 Pirtle's Digest, title, "Possession," p. 205, sec. 79; 3 J. J. Marshall, 280.

NAPTON, J., *delivered the opinion of the Court.*

This was an action of trover brought by the defendant in error, Paul C. Bowles, to recover the value of a negro girl, alleged to have been converted by the defendant to his use.

On the trial, the plaintiff produced a deed of trust from Stephen Bowles, of Amherst county, Virginia, granting to him the slave in controversy, in trust for the daughter of the grantor, Elizabeth Ryan, during her life, with remainder to her children living at the time of her death; and authorising the trustee to hire out the said slave, or permit Mrs. Ryan to remain in possession of her, as he should deem most to the interest of the said Elizabeth, but in no wise to suffer the husband of the said Elizabeth to exercise any control over the slave. This deed was duly executed, acknowledged and recorded, in pursuance of the laws of Virginia regulating such conveyances. The title of Stephen Bowles, the grantor in the deed, at the time of its execution, was also established.

The defendant claimed by virtue of a sale made by Ryan, the husband of the *cessui que use*, who removed from Virginia to Missouri shortly after the execution of the deed, and whilst here sold the slave to defendant for three hundred and fifty dollars.

The defendant offered to prove that Ryan was in possession of said negro for eight or nine months; that he exercised acts of ownership over the said slave; that defendant had no notice of the claim of said Paul C. Bowles; that said Bowles kept his claim secret from defendant, and that the possession by Ryan of this slave was with the knowledge and consent of said Bowles. This evidence was rejected by the court.

The defendant also offered to prove, that the conveyance of the slave from Stephen Bowles to the said Paul C. Bowles was a feigned and pretended sale, and that the same was fraudulent and void; but the court refused to permit the defendant to give this proof.

The judge instructed the jury, that if the said Ryan was merely entrusted with

the possession of said negro, without any power or authority from the owner to sell said girl, that such sale could convey no title, although the purchaser had no knowledge of the plaintiff's claim; and refused to instruct the jury, at the instance of defendant, that the possession of Ryan was *prima facie* evidence of title, and that the purchase by the defendant, for a valuable consideration, without notice, was a good defence to the plaintiff's action.

The plaintiff had a verdict and judgment for the value of the slave.

To reverse this judgment, it is relied, that the court erred in its instructions, and in excluding the defendant's testimony.

This was a contract executed in Virginia, where all the parties resided; and it is conceded that its acknowledgment was in due form, and that, by the laws of Virginia, it was good against creditors and purchasers.

It is a settled maxim, that personal property has no visible locality, but is subject to the law which governs the person of the owner, both with respect to the disposition of it *inter vivos*, and its transmission, either by succession or the act of the party. (Sill *vs.* Wenwick, 1 H. Bl., 690.) If any question had arisen in relation to the construction of this contract, and there was a conflict between the law of Virginia and the law of this State on that subject, the former, as the *lex loci contractus*, would prevail. But it is not seen, that any question of this character has been raised. We are not apprized of any different construction prevailing in Virginia from that which would govern the construction of the contract in this State.

If this conveyance be within the meaning and provisions of our statute of frauds, and requires recording to be available against purchasers and creditors, the claims of the creditor or purchaser will not be affected by the circumstance that the deed was made in another state. When citizens of other states remove to this state, their personal rights and duties, whilst within its jurisdiction, must be regulated by its laws, and not by the laws of the state from which they emigrated.

It becomes, then, material to inquire whether the defendant was protected in his purchase by our statute.

The 4th section of the act concerning frauds provides, that voluntary conveyances of slaves, &c., are void against creditors and purchasers, where possession does not *bona fide* accompany such gift or conveyance, unless the deed be recorded.

The defendant here purchased, not from any of the parties to the conveyance, but from a person to whom the law, and not the deed, had entrusted the possession of the property. If the statute be construed to protect such purchasers, it might be very well doubted whether it would not itself become an instrument of fraud.

The statute was designed to protect against the frauds of the donor or donee, vendor or vendee, and could not intend to place the estate at the mercy of third persons, not parties to the deed. We are the more confirmed in this impression by observing this has been the uniform construction of the statute in Kentucky, where cases similar to the present have occurred frequently, and been passed upon by their courts.

In the case of Forsyth *vs.* Kreakbaum, 7 Mon. Rep., 79, the court declared, that where the property was held by a person as the mutual guardian or fiduciary of a

third party, who has made no sale or loans, and contracted no debts to be defrauded, they would not suffer the acts of such fiduciary or guardian to affect the interests of his *cessui que use*. "It would be a merciless act of the law," the court observes, "to deprive an infant of possession, and declare him or her incapable of managing the estate, and for this cause assign the possession to another, and afterwards make it a fraud in the infant for permitting that possession, and subject the estate to the debts or sales of him to whom the law confided the possession, barely because he had the possession."

In this case the court held the possession of the father to be the possession of the child, and the father being neither the borrower nor the lender, grantor or grantee, the estate was held not subject to his debts or sales.

The same principle was maintained by the same court in Kenningham *vs.* McLaughlin, 3 Mon. Rep., 31. That was a case where the grandfather had given a slave to his grand child, and the creditors of the father sought to make it liable to his debts. The court held the case not within that section of the statute which vitiates loans and grants for more than five years, where the reservation of title is not made in writing, or possession does not accompany the grant. And it is worthy of observation, that this clause of the act (which in our statute is the 5th section,) in terms, protects the creditors and purchasers of the party *in possession*. But the court said, "This is not a grant from the father to the child, he remaining the ostensible owner. It is neither a loan nor a gift from the grandfather to the father, but a positive gift to the grandchild. Neither the creditors of the grandfather nor of the grandchild have disturbed the title, but the creditors of the father, to whom the slave was never given or loaned, but in whose custody the slave remained, from necessity, as the natural guardian of the child, who was not able to protect her own interests. The possession of the father must, then, be considered the possession of the child; and although this possession, being apparently in the father, might give him a delusive credit, yet, subjecting the slave to his debts would punish the child for an offence in which she had no participation, and present the absurdity of taking her property from the custody of him to whom the law gave it for her, and subjecting it to his debts."

In Orr *vs.* Pickett, 3 J. J. Marshal, 280, the court further held, that where the title was not in the infant, but in another who was bound to hold the title for the infant, the possession should still be considered as in the infant as *cessui que use*, although the father was entitled in law to the possession.

In principle, it is difficult to see any distinction between the cases cited, and the case now under consideration. The rights, powers and liabilities of a married woman are more restricted, and her interests as much protected by the law as those of an infant. It might well be questioned, then, whether the possession of the husband is not to be regarded in such cases as the possession of the wife, as much as the possession of the father is the possession of the child.

We deem it unnecessary, however, to determine, whether the possession of Mrs. Ryan, in this case, was such an one as would be sufficient, under the 4th section of our act, to supersede the necessity of recording.

It is sufficient that the party objecting to this conveyance has derived no title from any party to it, and is not a purchaser within the protection of the statute.

As to the instructions which the defendant asked of the court, the principles asserted in them were unquestionably correct, but not applicable to the case before the jury.

The maxim of law, that possession is *prima facie* evidence of title to personal property, is very much misconceived, if it be supposed to sanction the idea, that in general, and without reference to special statutory enactments, a possessor of such property can, by a breach of faith, transfer a title which he has not himself. Such a deduction would destroy all confidence in society, and place the prudent and cautious upon a footing with the fraudulent or careless. It would subvert the maxim of *caveat emptor*, which has been held applicable to personal as well as real property, and which, whilst it requires a suitable vigilance on the part of the purchaser in relation to the quality of the thing purchased, enables him at all times to rely on the vendor for his title. The possession of personal property, instead of being *prima facie*, would be conclusive evidence of title, if the possessor, by casualty or in a fiduciary character, can *mala fide* convert that possession into title; and, as was observed by Judge Trimble, in the case of Chism *vs.* Woods (Hardin) "many legislative enactments to prevent frauds were mere supererogations, and the action of warranty of title to personal goods, so frequent in the books, could only have been necessary where a felony had been committed by some one through whose hands the goods had passed, or where, in reality, there had been a loss and a finding."

Judgment affirmed.